# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS R. HUTTON,<br><br>                                Plaintiff,<br>  vs.<br><br>LAW OFFICES OF COLLINS & LAMORE,<br><br>                              Defendant. | CASE NO. 09CV0752-LAB (CAB)<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS** |

Chris Hutton alleges that the Law Offices of Collins & Lamore attempted to collect a debt in a manner that violated the Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act. Specifically, Hutton claims that a dunning letter he received from Collins & Lamore demanded an amount of $22,519.17 but some unknown or confusing amount of interest, and therefore failed to include the total amount of the debt as required by law. Now before the Court is Collins & Lamore's motion to dismiss.

**I.    Factual Background**

The following facts are undisputed. Hutton was issued a credit card by Advanta Bank, and on November 5, 2008, Collins & Lamore (the "Firm") sent Hutton a dunning letter attempting to collect the outstanding balance. That letter said

> Dear CHRISTOPHER R HUTTON,
>
> Please be advised that this office has been retained by the above referenced client in regard to your outstanding balance

> due in the amount of $22,519.17, which may not include accruing interest (and does not account for changing exchange rates after the date of this letter, for accounts originated in a foreign country). As interest may continue to accrue, Please call our office to verify current balance if payment in full is made more than 30 days after the date of this letter. Please make all payments directly to this office and made payable to 'Collins Lamore Trust Account'.
>
> I am, of course, willing to discuss the above with you. Please feel free to call me toll free at 1-800-864-1773 or email me at mike@collinslarmorelaw.com

(Collins Decl., Ex. 2.) Over one month later, on December 12, 2008, the Firm filed a collections lawsuit against Hutton in San Diego Superior Court.

## II.  Procedural History

Hutton filed this action on April 13, 2009. The Firm filed a motion to dismiss and an anti-SLAPP motion to strike on June 4, 2009. The motion to dismiss was also pled, in the alternative, as a motion for summary judgment. Both motions were thoroughly briefed by the parties, and the Court took them under submission on August 25, 2009.

## III.  Legal Standards

A rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In considering such a motion, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). That said, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[S]ome threshold of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558 (internal quotations omitted). While a court must draw all reasonable inferences in the plaintiff's favor, it need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotations omitted).

//

**IV.   Discussion**

The Firm makes two separate arguments in support of its motion to dismiss Hutton's action. The first is that the FDCPA isn't even in play because the debt at issue is business rather than personal debt. The second argument is that, notwithstanding the nonspecific reference to "interest" in the November 5, 2008 letter, the dunning letter did not sufficiently state the amount of Hutton's alleged debt. The Court will address these arguments in turn.

**A.   Nature of Hutton's Debt**

The FDCPA defines the term "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for *personal, family, or household purposes*, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added). In other words, the FDCPA applies to consumer debts and not business loans. *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074 (9th Cir. 2001). The Firm argues that Hutton's debt isn't covered by the FDCPA, either because that debt was *actually* incurred for business purposes or because the credit extended to Hutton was *intended* for business purposes.[1] The basis for this argument is a "Business Card Agreement" between Advanta and Hutton that the Firm believes established the nature of Hutton's debt, and that the Firm asks the Court to consider even though it is supplemental material that is not part of the pleadings. (*See* Collins Decl. Ex. 1.)

**1.   Admissibility of Business Credit Agreement**

In ruling on a motion to dismiss, the Court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) (internal quotations omitted). In addition, supplemental documents not attached

---

[1] The Firm's motion to dismiss makes both points, ostensibly without realizing their difference. *Compare* "Plaintiff has failed to demonstrate a viable legal theory under FDCPA and the Rosenthal Act, because the 'debt' incurred was not primarily for personal, family, or household purposes" (P&A at 5) with "Because the purpose of Plaintiff's request for credit was solely for business purposes and *not* for personal, family, or household purposes, plaintiff's debt was not covered under FDCPA" (P&A at 6).

to a complaint may be incorporated by reference – and considered in ruling on a motion to dismiss – if the plaintiff's complaint refers extensively to them or if they are essential to a plaintiff's claim. *See* Fed. R. Civ. P. 10(c); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

First things first, the "Advanta Business Card Agreement" submitted by the Firm is not even legible. The text has been shrunk and darkened beyond recognition. Second, even under the standard reiterated in *Ritchie*, which is a case cited by the Firm, it is hard to see how the Business Card Agreement is admissible. The document is not mentioned once in Hutton's complaint, much less referred to *extensively*, and Hutton's FDCPA action does not depend on it. Third, because the document is labeled "Sample Only," has no signatures, and is essentially illegible, its authenticity is debatable. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (district court may consider documents whose authenticity no party questions).

The Firm cites a case decided by this Court, *Sicairos v. NDEX West, LLC*, No. 08CV2014, 2009 WL 385855 at *1 (S.D. Cal. Feb. 13, 2009), and says the Court "considered documents incorporated by reference to evaluate FDCPA and Rosenthal Act claims." That is true, but *Sicairos* presented a very different set of facts than this case does. The plaintiff in *Sicairos* sought to thwart foreclosure proceedings on the grounds the defendant couldn't produce the original promissory note relating to his mortgage. The documents that the Court recognized were referenced either in the complaint or in exhibits attached to the complaint. They were also legible, and their authenticity was not in doubt. Finally, the Court made an independent determination that the documents were also appropriate for judicial notice under Fed. R. Evid. 201(b)(2); it cannot make the same judgment with respect to the Business Credit Agreement.

*Slenk* is also of no help to the Firm on this issue. The Ninth Circuit in *Slenk*, a FDCPA case, concluded that a loan instrument spoke to the question whether a debt was consumer in nature. That is obviously true, but *Slenk* was an appeal from summary judgment entered against the plaintiff; the loan document was part of the evidentiary record at that point, and there were apparently no doubts as to its authenticity. *Slenk*, 236 F.3d at 1075-76.

Contrary to what the Firm would have the Court conclude, Hutton's mere admission in his complaint that he "is obligated or allegedly obligated to pay a debt" is insufficient to incorporate by reference the Business Credit Agreement, particularly given the condition of that document as submitted and the non-trivial doubts as to its authenticity raised by Hutton. The Court therefore declines to consider the Firm's argument that Hutton's debt isn't covered by the FDCPA on the grounds it was incurred, actually or ostensibly, for business purposes. With the Business Credit Agreement out of the picture, there is no basis for that argument at this stage in the litigation.

### B.   The Amount of the Debt

Whether the November 5, 2008 dunning letter sufficiently identified the amount of Hutton's debt is the heart of this case, and it is the question that is properly before the Court on a motion to dismiss.[2]  It is also a question of law.[3]  *Terran*, 109 F.3d at 1432 ("[T]he caselaw makes clear that the question whether language in a collection letter overshadows or contradicts the validation notice so as to confuse a least sophisticated debtor is a question of law.").

While the text of the FDCPA requires debt collectors to inform consumers of "the amount of the debt" they are alleged to owe, it does not clarify how exact the amount must be, or whether portions of the amount can be left for subsequent verification. 15 U.S.C. § 1692g(a)(1). The Firm's dunning letter to Hutton stated he owed $22,519.17, "which may

---

[2] Along with the Business Credit Agreement, the Firm also asks the Court to consider the full text of the letter in ruling on its motion to dismiss. This is a far more reasonable request. It is referenced explicitly in the complaint and central to Hutton's action. The request is also unnecessary, however, considering Hutton attaches the letter to his brief opposing the motion to dismiss. (Vafaei Decl. Ex. 7.)

[3] *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) informs us that "[w]hether there has been a violation of section 1692g's validation requirement has generally been decided by district courts on motions for summary judgment . . ." While that may be true, it is not unheard of for courts to decide this question on a motion to dismiss. *See Dupuy, infra.* Although the Firm has moved for summary judgment in the alternative, the Court does not believe it matters, with respect to the § 1692g(a)(1) question, whether to treat the Firm's motion as one to dismiss or one for summary judgment. By contrast, were the Court to fully consider the Firm's argument that the nature of Hutton's debt was business and not personal, it would have had to convert the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d). That question involved the review of material that was outside of the pleadings.

not include accruing interest (and does not account for changing exchange rates after the date of this letter, for accounts originated in a foreign country)." Hutton claims "[n]o other statement is made with regard to the amount of the debt, and these vague and misleading statements leave open the issue of what is actually alleged by Defendant to be owed." (Opp'n Br. at 7.)

Ostensibly, the Court must judge the language of the dunning letter from the perspective of the "least sophisticated debtor." *See Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996). Obviously, however, this standard can't be taken literally. As the Seventh Circuit has observed, the *least* sophisticated debtor is the single most unsophisticated debtor who exists, which means he or she can't even *read* a collection notice, much less reasonably interpret one. *Chuway v. Nat'l Action Fin. Services, Inc.*, 362 F.3d 944, 948-49 (7th Cir. 2004). It makes more sense to judge from "an unsophisticated debtor" standard, which "assumes that the debtor is 'uninformed, naive, or trusting,' and that statements are not confusing or misleading unless a significant fraction of the population would be similarly misled." *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003). The unsophisticated consumer is still assumed, however, to have "rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses 'reasonable intelligence,' and is capable of making basic logical deductions and inferences." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000).

According to Hutton, the leading authority on whether an interest amount must be specified in a dunning letter is the Seventh Circuit's decision in *Miller v. McCalla*, 214 F.3d 872 (7th Cir. 2000), authored by Judge Posner. The Firm also relies on this decision, so it makes sense to recite its facts here. The dunning letter at issue in *Miller* said the "unpaid principal balance" was $178,844.65, and went on to say

> this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement. The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures.

*Id*. at 875. The Seventh Circuit decided that the letter violated the FDCPA on the grounds

"[t]he unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt." *Id*. The decision went on to say that the "amount of the debt requirement" under § 1692g(a)(1) is not met by providing the debtor with a phone number to call, nor is it an excuse that accruing interest causes the amount of the debt to change daily. *Id*. "What they certainly could do was to state the total amount due – interest and other charges, as well as principal – on the date the dunning letter was sent. We think the statute required this." *Id.* at 875-76. Finally, the Seventh Circuit drafted "safe harbor" language for satisfying the debt collector's duty to state the amount of the debt in a dunning letter:

> As of the date of this letter, you owe $____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number].

*Id.* at 876.

Hutton considers *Miller* "factually similar" to this case, but it isn't. In fact, there are two important differences between the cases. First, the dunning letter at issue in *Miller* led with the "unpaid principal balance," which explains Judge Posner's observation that the FDCPA "requires statement of the [whole] debt." The dunning letter sent to Hutton, however, led with his "outstanding balance" of $22,519.17, a phrasing that implies it is the *entire* amount owed. Second, whereas the unspecified interest referred to in the *Miller* dunning letter was "accrued," in Hutton's dunning letter it was "accruing." Accrued interest is past interest that a debtor owes at a given moment; it is, without a doubt, part of "the amount of the debt" that the FDCPA requires a creditor to specify. Accruing interest, on the other hand, is interest that a debtor may owe in the future if his or her debt is not paid off in a timely manner. It is a *potential* add-on to his or her present debt that cannot be specified in a dunning letter and can only be referred to in a hypothetical sense. Hence the safe harbor language that Judge Posner crafted in *Miller*: "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." These words allow

a creditor to claim interest that accrues after a dunning letter is sent to a debtor and before his or her debt is satisfied *without* specifying an amount of such interest, and *without* violating the FDCPA.

So, the Court will certainly heed *Miller* here, but the case does not lead to the conclusion Hutton believes it does. To the contrary, the fact that the dunning letter in *Miller* created uncertainty from the outset by referring to an "unpaid principal balance," and went on to mention *accrued* (past tense) interest, makes *Miller* a distinctive case. The contrast between *Miller* and this case recommends a different result here.

Hutton was informed up front in his dunning letter that his "outstanding balance" was $22,519.17. This leaves nothing to the imagination. *See Chuway*, 362 F.3d at 947 ("balance," without any qualifying adjectives such as "principal," represented entire debt). The letter also informed Hutton that his balance might not include accruing interest, and to call an 800 number for his latest balance if he did not pay the full debt within 30 days. The clear implication of this language is equivalent to the "safe harbor" language drafted by Judge Posner in *Miller*: "Because of interest . . .the amount due on the day you pay may be greater." In other words, it lets Hutton know that interest will be accruing on the $22,519.17 amount, and that if he waits another month to pay his bill that amount will go up. *See Valdez v. Hunt & Henriques*, No. C 01-01712, 2002 WL 433595 at *2-3 (N.D. Cal. 2002) (dunning letter that stated "you owe $3,056.08" in opening sentence and "ALLEGED DEBT: $3,056.08 plus interest" in caption accurately stated amount of the debt). The best the Firm can do – and all they are obliged to do under *Miller* – is to let Hutton know that his outstanding balance may increase because of interest and provide him with an 800 number to call to obtain his latest, up-to-date balance. There is no way in a dunning letter to specify an amount of interest that may accrue in the future, given that the collector has no idea when, if at all, the debtor will pay up.

Beyond *Miller*, each of the cases the Court is aware of in which a debtor has been found to violate the PDCPA for not specifying the amount of a consumer's debt can be distinguished from Hutton's case. In *Chuway*, the dunning letter stated a "balance" of

$367.42 and then immediately provided an 800 number for the debtor to call to obtain his "most current balance information". *Chuway*, 362 F.3d at 947. No explanation was given as to why the $367.42 amount might change, and understandably this could have caused some confusion. In *Dupuy v. Weltman*, 442 F.Supp.2d 822 (N.D. Cal. 2006), the debt collector sent two notices whose messages conflicted: a March letter specified a balance amount and nothing more, and an April letter specified that same balance amount and went on to say it "may change daily if interest is accruing." *Id.* at 827.[4] Finally, in *Welker v. Horwitz*, 626 F.Supp.2d 1068 (S.D. Cal. 2009), a recent decision of this Court, the dunning letter at issue contained only the principal amount of the debt and merely indicated the debtor was liable for interest – and the collector tried to avoid a FDCPA violation by saying it was willing to accept only the principal amount as payment in full of the debt.

For the above reasons, the Court does not believe Hutton has a FDCPA claim. In the final analysis, a dunning letter must state the amount of the debt "clearly enough that the recipient is likely to understand it," *Chuway*, 362 F.3d at 948, and the letter sent by the Firm to Hutton, in the Court's judgment, did just this, even on a "least sophisticated debtor" or "unsophisticated debtor" standard. The Firm's motion to dismiss is **GRANTED**.

### C. Collins & Lamore's Motion to Strike

In addition to the Firm's motion to dismiss, it also filed a special motion to strike Hutton's complaint under California's anti-SLAPP statute. Hutton filed this FDCPA action on April 13, 2009, after he received the November 5, 2008 dunning letter *and*, more importantly, after the Firm sued him in San Diego Superior Court on December 12, 2008. The anti-SLAPP statute is intended to nip at the bud lawsuits brought to chill the exercise

---

[4] Hutton says "[i]n *Dupuy*, the court found that a letter in which the debt collector indicated interest might be due violated the FDCPA because, just as here, the debt collector did not indicate the amount of that interest." (Opp'n Br. at 8.) That is inaccurate. In fact, the decision noted that the April letter "did not disclose the amount of any interest owed *as of the date the letter was sent*." *Id.* at 828 (emphasis added). The Firm is covered here because it advised Hutton of his "outstanding balance" and only referenced future interest. Hutton also quotes *Dupuy* as holding that "Section 1692g(a)(1) requires debt collectors 'to state the total amount due – interest and other charges as well as principal – on the date the dunning letter was sent.'" In fact, this is not the holding of *Dupuy* but of *Miller*, which Hutton neglected to clarify.

of speech and petition rights, and the Firm argues that Hutton's FDCPA action "was brought primarily to chill Defendant's right to petition the courts."

The Firm's motion is a non-starter. In considering an anti-SLAPP motion to strike, the Court must first decide "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). There is no doubt that the Firm's Superior Court lawsuit against Hutton is protected activity, but there is plenty of doubt that *that lawsuit*, rather than the dunning letter, is what motivated Hutton to allege violations of the FDCPA. The Firm's "evidence" to the contrary is limited to two observations. First, Hutton says in his complaint that he "brings this action to challenge the actions of . . . Defendant . . .with regard to attempts by Defendant to unlawfully and abusively collect a debt allegedly owed by Plaintiff." (Compl. ¶ 3.) Second, Hutton attached the Superior Court action to his brief opposing the Firm's motion to dismiss.

The Court does not find these observations sufficiently revealing. It is the Firm's burden to demonstrate that the acts of which Hutton complains were taken in furtherance the Firm's right of petition, but the overwhelming gist of Hutton's FDCPA action is that the *dunning letter*, not the Superior Court action, is this inspiration behind the action. *See Welker*, 626 F.Supp.2d at 1073 ("The mere sending of a debt collection letter, without more, does not invoke anti-SLAPP protection."). Ultimately, it is pure conjecture, based only on the timing of Hutton's present action vis-a-vis the dunning letter and the Firm's lawsuit against Hutton in Superior Court, that Hutton is using the FDCPA to retaliate against the Firm for pursuing litigation against him.

In addition, the Firm's argument reduces to an absurdity: A debtor who wants to sue a debt collector for violating the FDCPA must do so before the collector – or the collector's client – sues the debtor in another attempt to collect; otherwise the FDCPA action is foreclosed on the grounds it is retaliation for the collector's lawsuit. Were the Firm to have its way, a savvy collector would be incentivized to send out a dunning letter one day and file

//

a lawsuit in quick course. Then, the moment the debtor files suit under the FDCPA, the collector will have an anti-SLAPP motion to strike ready to fire.

The Court has granted the Firm's motion to dismiss, and that should be enough for the Firm. Its motion to strike under Cal. Code Civ. Proc. § 425.16 and for attorneys' fees is **DENIED**.

## V.     Conclusion

The Court finds, as a matter of law, that the dunning letter sent to Hutton by the Firm stated the amount of Hutton's debt in accordance with § 1692g(a)(1). The Firm's motion to dismiss is therefore **GRANTED**. Its anti-SLAPP motion to strike is, however, **DENIED**.

**IT IS SO ORDERED**.

DATED: November 9, 2009

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge